UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHAUN M.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | NO. 2:21-CV-0020-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 12 and 13). Plaintiff is represented by Chad Hatfield. Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion and grants Defendant's motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 7, 2017, Plaintiff filed an application for Title XVI supplemental security income benefits. Tr. 18, 200. The application was denied initially, Tr. 80-86, and on reconsideration, Tr. 87-102. Plaintiff participated in a telephonic hearing before an administrative law judge ("ALJ") on July 2, 2020. Tr. 40-79. On July 27, 2020, the ALJ denied Plaintiff's claim. Tr. 18-31.

At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 7, 2017, the application date. Tr. 20. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease/scoliosis of the spine; tendonitis of the left knee; degenerative joint disease of the left shoulder; depression; anxiety disorder; post-traumatic stress disorder; and personality disorder. Tr. 21. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id*. The ALJ then found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) except:

> [Plaintiff] can only stand and/or walk for four hours during an eight-hour workday; can sit without limitation; can occasionally reach overhead with his left upper extremity; can use his left upper extremity to reach in all other direction on a frequent basis; can occasionally push and/or pull with his left upper extremity; can never climb ladders, ropes or scaffolds, but can perform all other postural activities on an occasional basis; can work superficially and occasionally with the general public; can work in the same room with co-workers but with no coordination of work activity.

Tr. 23.

At step four, the ALJ found Plaintiff was capable of performing past relevant work as a security guard. Tr. 30.[1]  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office helper, routing clerk, and mail room clerk. Tr. 29-30.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, since August 7, 2017.  Tr. 29, 31.

On November 5, 2020, the Appeals Council denied review, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

---

[1]  Pages 12 and 13 of the ALJ's written opinion were reproduced in the wrong order.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred by improperly evaluating the medical opinion evidence;

2. Whether the ALJ erred at step three in failing to conduct an adequate analysis and failing to find the claimant disabled;

3. Whether the ALJ erred by rejecting claimant's subjective complaints; and

4. Whether the ALJ erred in failing to conduct an adequate analysis at steps four and five.

ECF No. 12 at 7.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the opinion of examining psychologist Dr. Troy Bruner, EdD. ECF No. 12 at 10-14.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. 20 C.F.R. § 416.920c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg.

5844-01 (Jan. 18, 2017). The ALJ applied the new regulations because Plaintiff filed his Title XVI claim after March 27, 2017. *See* Tr. 15.

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a)–(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)–(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. § 416.920c(b)(2). These factors are explained as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 416.920c(b)(2). However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered. 20 C.F.R. § 416.920c(b)(2).

The parties dispute whether Ninth Circuit law that predates the new regulations apply. ECF Nos. 13 at 5-7; 14 at 2. The Ninth Circuit currently requires the ALJ to provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the Ninth Circuit has held the medical opinion can only "be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (internal citation omitted).

At this time, the Ninth Circuit has not addressed whether these standards still apply when analyzing medical opinions under the new regulations. For purposes of the present case, the Court finds that resolution of this issue is unnecessary. *See Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981–82 (2005) ("[T]he Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from unambiguous terms of the statute and thus leaves no room for agency discretion.'")).

The ALJ found that "Dr. Bruner's opinion that the claimant would not have any difficulty performing simple/repetitive or detailed/complex tasks, accepting instructions from supervisors, interacting with co-workers and the public, or performing work activities without special instructions persuasive as these aspects of his assessment are supported by his unremarkable examination findings and with the record as a whole, which shows the claimant has intact cognition, interacts appropriately with others, and can engage in a fairly normal range of activities." Tr. 28. However, the ALJ found

> unpersuasive Dr. Bruner's opinion that the claimant would have difficulty maintaining regular attendance and completing a normal work week without interruptions from a psychiatric condition and managing the usual stress encountered in the workplace. This aspect of Dr. Bruner's opinion is not well-supported by his findings, which include the claimant's ability to interact well throughout the evaluation and his

        demonstrated intact focus and concentration during the mental status examination. Rather, this aspect of his opinion appears to be based entirely on the claimant's report that he has lost numerous jobs due to mental issues such as "paranoia." As this allegation is not supported by any evidence, such as contemporaneous treating notes, statements from previous employers or co-workers, or objective documentation or clinical observation of his alleged paranoia, it is not a sufficiently reliable basis upon which to assess any limitations. Accordingly, the undersigned finds this aspect of his assessment to be unpersuasive.

Tr. 28. In context, Dr. Bruner saw claimant one time for an evaluation. The ALJ reviewed his report, Tr. 293-97, and came to these conclusions based on substantial evidence in the record. Plaintiff contends Dr. Bruner did not even use the word "paranoia" so the ALJ's findings are without basis. ECF No. 12 at 11. However, Dr. Bruner specifically used the word "paranoid" at Tr. 293 ("When asked what prompts him to abruptly leave or quit, he stated that he sometimes feels "paranoid," like people are looking at him, but he was not sure.").

      Further, the ALJ contrasted Dr. Bruner's opinion with Dr. Brown's, which the ALJ found "persuasive as it is supported by the unremarkable psychiatric findings and the claimant's typically normal presentation during appointments and because it is consistent with the claimant's lack of mental health treatment and lack of evidence regarding any significant mental health issues." Tr. 28, 30. No error has been shown as the ALJ rejected part of Dr. Bruner's opinion for clear and convincing reasons which are supported by substantial evidence in the record.

### B. Step Three Analysis

Plaintiff contends the ALJ erred at step three by "failing to consider the combined effects of the claimant's PTSD, personality disorder, anxiety, and depression." ECF No. 12 at 14-17. Plaintiff contends that "when the evidence is properly considered, the claimant maintains that he is disabled pursuant to Listings 12.04, 12.06, 12.08, and 12.15, due to extreme limitations in the ability to adapt or manage oneself." *Id*. at 17.

The ALJ found that Plaintiff's impairments did not satisfy the requirements of any listing. Tr. 21. The ALJ expressly discussed the listings for each of the alleged impairments. Tr. 21-23 (discussing Listings 12.04 (depressive disorders), 12.06 (anxiety disorders), 12.08 (personality disorders), and 12.15 (trauma- and stress-related disorders)). These listings require that the claimant show an extreme limitation in one, or marked limitations in two, of the following functional areas (referred to as the paragraph B criteria): 1) Understand, remember, or apply information; 2) Interact with others; 3) Concentrate, persist, or maintain pace; and 4) Adapt or manage oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.06, 12.08, and 12.15. With respect to Plaintiff's narrow argument about the ability to adapt or manage oneself, the ALJ found:

> As for adapting or managing oneself, the claimant has experienced no limitation. In reaching this determination, the undersigned finds nothing in the record to suggest the claimant has any difficulties in this area. That is, there is nothing in the record to suggest the claimant does not maintain

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

>an appropriate level of hygiene or dress appropriately for the situation and weather. Moreover, he reports he is able to take care of his personal needs, care for his children, and handle routine household chores (see Exhibits 3-F, 4-F). Accordingly, as the evidence does not show the claimant had any difficulties adapting or managing himself, the undersigned finds he is not limited in this area.
>Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

Tr. 23. Substantial evidence supports the ALJ's conclusion, no error has been shown.

### C. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ erred by failing to consider Plaintiff's testimony that he suffers severe agoraphobia and codependence, with the inability to leave his fiancée's side, the frequent inability to leave his home, and severe anxiety and panic attacks in public, with difficulty breathing at times. ECF No. 12 at 18. Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons for making a negative credibility finding. *Id*.

The ALJ directly addressed this issue. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms but that his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24. The ALJ pointed out numerous inconsistent statements

Plaintiff made to medical providers and in his testimony. Tr. 24-26. For instance, "when he was seen for a consultative psychological examination, the claimant specifically denied having any physical problems, and during medical appointments, he is typically noted to be in no acute distress." Tr. 25 (citations to the record omitted). Without repeating all the numerous inconsistencies, the ALJ noted that:

> despite the claimant's allegations regarding his mental health issues, he has been able to function appropriately during medical appointments and is typically described as alert and cooperative with normal mood, affect, attention span, and concentration. That is, while the claimant has alleged having agoraphobia to the point he cannot leave his house and paranoia so extreme he has quit all of his past jobs, he does not exhibit any significant mental health issues when seen for evaluation and has not made any effort to obtain mental health treatment. It seems reasonable to assume that if the claimant's mental problems were as debilitating as he has described, he would make a concerted effort to obtain treatment to address his issues, and his failure to do so thus detracts from the reliability of his allegations in this regard.
> In considering the claimant's allegations, the undersigned also notes the claimant has made some inconsistent statements and has also acknowledged engaging in activities which suggest he is not as limited as he has alleged. For example, while the claimant testified he was terminated from his job with Home Depot because he was scared and unable to function, the evidence of record indicates only that the claimant reported he could not handle the strenuous exertional requirements of his job, with no mention of any mental health issues. . . . . The claimant's allegation that he could not leave his house and, in fact, had to be dragged out when his fiancé was assaulted in December 2018, is also not consistent with the fact the claimant was working at that time. When asked about this discrepancy during the hearing, the claimant stated his mother had to drive him to Home Depot. There is no evidence to confirm this situation and, in any regard, would suggest only that the claimant preferred not to drive, not that he was unable to leave his house. Furthermore, during a consultative examination, the claimant reported he

>is able to leave his house to run errands such as shopping for groceries. . . The undersigned also notes that while the claimant has denied having any history of drug or alcohol use, the evidence indicates he was using methamphetamine into 2018, a discrepancy which further detracts from the reliability of his allegations.

Tr. 25-26 (citations to record omitted).

The ALJ provided clear and convincing reasons for making a negative credibility finding. No error has been shown.

**D. Steps Four and Five Analysis**

Plaintiff contends the ALJ committed legal error in relying on the vocational expert's response to an incomplete hypothetical. ECF No. 12 at 20. Plaintiff contends that if his self-described limitations were accepted, he would be considered disabled.

Plaintiff has shown no error on the part of the ALJ nor any error in finding Plaintiff's residual functional capacity. Accordingly, the RFC and hypothetical presented to the vocational expert are supported by substantial evidence and no reversible error has been shown.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter judgment accordingly, furnish copies to counsel, and **close the file**.

DATED December 1, 2021.



THOMAS O. RICE
United States District Judge